270 N.J. Super. 621 (1994)
637 A.2d 941
IFA INSURANCE COMPANY, PLAINTIFF-APPELLANT,
v.
RUSSELL C. WAITT AND CNA INSURANCE COMPANIES, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 15, 1993.
Decided February 3, 1994.
*622 Before Judges J.H. COLEMAN and LEVY.
Steven G. Kraus, Esq., argued the cause for appellant.
Douglas M. Fasciale, Esq. argued the cause for respondent (Hoagland, Longo, Moran, Dunst & Doukas, attorneys).
LEVY, J.S.C. [temporarily assigned].
Plaintiff appeals from an order granting summary judgment to defendant, holding that a PIP insurance carrier is not entitled to reimbursement from a commercial liability carrier where the commercial carrier's liability limit has been exhausted. We affirm.
On March 13, 1989, defendant Russell C. Waitt drove his truck into the rear of a passenger car operated by Thomas Nedermeyer; that car was propelled into the rear of Robert Smith's car. Smith was injured, and he was paid $30,965.99 in personal injury protection (PIP) benefits by plaintiff IFA Insurance Company (IFA), his auto insurance carrier. Waitt's truck was insured by defendant CNA Insurance Companies (CNA), but the policy limited the liability coverage for any one accident to $75,000. That amount was deposited into court in the underlying personal injury action between Smith and Waitt.
PIP reimbursement to a PIP carrier from a commercial liability carrier is governed by N.J.S.A. 39:6A-9.1. Enacted in 1983, it provides in pertinent part that:
An insurer ... paying ... personal injury protection benefits ... as a result of an accident occurring within this State, shall, within two years of the filing of the claim, have the right to recover the amount of payments from any tortfeasor who was not, at the time of the accident, required to maintain personal injury protection *623 or medical expense benefits coverage ... other than for pedestrians ... or although required did not maintain personal injury protection ... benefits. .. . In the case of an accident occurring in this State involving an insured tortfeasor, the determination as to whether an insurer ... is legally entitled to recover the amount of payments .. . shall be made against the insurer of the tortfeasor, and shall be by agreement of the involved parties or, upon failing to agree, by arbitration.
Ordinarily, pursuant to N.J.S.A. 39:6A-9.1, IFA would be reimbursed for the PIP benefits it paid to its insured, by CNA, either voluntarily or by arbitration. Disputes usually involve whether the PIP payments were reasonable and necessary or whether the expenses to be reimbursed were causally related to the accident. See, e.g., Thermographic Diagnostics, Inc. v. Allstate Ins. Co., 125 N.J. 491, 511-12, 593 A.2d 768 (1991); Miskofsky v. Ohio Cas. Ins. Co., 203 N.J. Super. 400, 409-14, 497 A.2d 223 (Law Div. 1984). Here, however, CNA resisted reimbursement because its liability coverage had been exhausted in the underlying action brought by the injured driver and passenger against the tortfeasor.
On cross-motions for summary judgment, the trial judge held statutory PIP reimbursement was restricted to the maximum coverage of the tortfeasor's liability policy. He observed N.J.S.A. 39:6A-9.1 does not specify the commercial carrier was responsible regardless of liability limits, and does not require a carrier to provide additional coverage to reimburse a claim under the statute. Since the underlying claims were based on negligence, he determined benefits were governed by the liability coverage terms and the PIP carrier could be reimbursed until the liability coverage was exhausted, but not thereafter.
N.J.S.A. 39:6A-9.1 was preceded by N.J.S.A. 39:6A-9 of the original No Fault Act,[1] which made insurers paying PIP benefits the subrogee of their insured, and granted such insurers a right of reimbursement only from the tortfeasor's insurer (assuming the tortfeasor was insured) and only by intercompany arbitration or agreement. We considered N.J.S.A. 39:6A-9 in Garden State *624 Fire and Cas. Co. v. Commercial Union Ins. Co., 176 N.J. Super. 301, 306, 422 A.2d 1327 (App.Div. 1980). There the tortfeasor's insurer paid the policy limits in settlement, mostly to the injured plaintiff and the balance to that party's PIP carrier. The PIP carrier had paid much more than it was reimbursed, so it sued the tortfeasor's excess carrier for the balance. We held the excess carrier not liable because its policy did not provide PIP benefits, concluding that N.J.S.A. 39:6A-9 required reimbursement to a subrogee only by those insurers who provided No Fault benefits in their automobile liability policies. This decision was partially based on the limited life given N.J.S.A. 39:6A-9, as we noted it was to remain in effect just two years in order "to allow insurers who provide PIP benefits to recover them, at least temporarily, as part of the rate-setting process." N.J.S.A. 39:6A-9 expired December 31, 1974. For the next eight years, PIP carriers were not indemnified for PIP benefits they paid; medical bills were paid by the insured injured person's carrier, regardless of fault.
Aetna Ins. Co. v. Gilchrist Bros., Inc., 85 N.J. 550, 562, 428 A.2d 1254 (1981) concerned an automobile accident between a passenger car and a commercial vehicle on April 5, 1975 when N.J.S.A. 39:6A-9 was not in effect. Aetna paid PIP benefits on account of its insured, and as subrogee pursuant to its policy, sought reimbursement from the tortfeasor's insurer. That carrier rejected the claim, asserting there was no legal basis for subrogation, because in the underlying tort action, N.J.S.A. 39:6A-12 prevents recovery of amounts already recovered under PIP. Aetna then brought a direct action against the tortfeasor for reimbursement of the PIP benefits. The Supreme Court held Aetna's rights were the same as its insured, and its insured could not recover PIP expenses from the tortfeasor because, under N.J.S.A. 39:6A-12, evidence of such damages was inadmissible in the underlying personal injury action. Since N.J.S.A. 39:6A-9 was not operative on the date of this accident, Aetna had no right to reimbursement.
The legislature enacted N.J.S.A. 39:6A-9.1 as part of The New Jersey Automobile Insurance Freedom of Choice and Cost *625 Containment Act of 1984. Designed to change the rule of Aetna, this section created a primary right of PIP reimbursement from the tortfeasor's insurer to the PIP carrier. See Wilson v. Unsatisfied Claim and Judgment Fund Bd., 109 N.J. 271, 280, 536 A.2d 752 (1988). N.J.S.A. 39:6A-9.1 expands the concept of reimbursement discussed in Garden State. This new section authorizes a direct action against the insurer of "any tortfeasor who was not, at the time of the accident, required to maintain personal injury protection or medical expense benefits coverage." Subrogation is no longer material.
We have previously held that insured commercial tortfeasors are immune from claims for PIP reimbursement, and the PIP carrier's recovery is limited to the commercial tortfeasor's insurer pursuant to N.J.S.A. 39:6A-9.1. See Sherman v. Garcia Const. Inc., 251 N.J. Super. 352, 356-57, 598 A.2d 242 (App.Div. 1991). Until now, we have not had occasion to consider whether recovery of PIP payments is limited to the amount of the commercial tortfeasor's liability coverage.
In his consideration of the motions before him, the trial judge was cognizant of, but disagreed with, Hanover Ins. Co. v. Lewis, 260 N.J. Super. 380, 616 A.2d 963 (Law Div. 1992). In Hanover, the court examined the statutory language, legislative history and related case law, and determined that N.J.S.A. 39:6A-9.1 does not limit reimbursement to the amount of the tortfeasor's liability policy. In his disagreement with Hanover, the trial judge implicitly adopted, without citation, the reasoning of Pennsylvania Mfrs. Assn. Ins. Co. v. Gov't Emp. Ins. Co., 136 N.J. Super. 491, 347 A.2d 5 (App.Div. 1975), aff'd o.b. 72 N.J. 348, 370 A.2d 855 (1977). Pennsylvania Mfrs. held the exposure of the tortfeasor's insurer in the claim of the injured party, or its subrogated PIP carrier, "is measured exclusively by its undertaking within the ambit of the liability feature of the policy which it wrote on behalf of the tortfeasor." Id. 136 N.J. Super. at 496-97, 347 A.2d 5. Therefore the injured party's insurer, by right of subrogation, could recover from the tortfeasor's carrier "in an amount limited by the coverage *626 of the liability feature of [the tortfeasor's] policy." Id. at 498, 347 A.2d 5. The court was unable to find any relief for the injured party or his insurer in N.J.S.A. 39:6A-9 or any other section of the No Fault Act, except that the injured party could satisfy its eventual judgment from the tortfeasor's policy up to its full limits.
We suggested in Sherman v. Garcia Const. Inc., supra, that, without amendment, N.J.S.A. 39:6A-9.1 would not permit recovery against a tortfeasor's insurer after the policy limits had been exhausted. This was by way of dictum since the issue was not directly before us because the PIP carrier did not press its claim after it learned the policy limits had been paid into court. Now, squarely confronted with the issue, we conclude the statute does not require the commercial tortfeasor's carrier to reimburse the PIP carrier after exhaustion of the liability policy limits where there is no excess policy. Without a specific legislative directive, we should not abruptly increase the exposure of the tortfeasor's liability carrier. We reaffirm our earlier statement that there are "varying ways to provide relief [to the PIP carrier], including requiring higher limits of liability insurance or rendering the tortfeasor's liability limits inapplicable to the reimbursement of PIP benefits. These are legislative not judicial options." Id. 251 N.J. Super. at 357, 598 A.2d 242.
Hanover recognized other jurisdictions have held PIP reimbursement is not subject to the tortfeasor's policy limits, but some of those decisions are distinguishable because the supporting legislation differs significantly from N.J.S.A. 39:6A-9.1. Cf., Criterion Ins. Co. v. Commercial Union Assur. Co., 89 Misc.2d 36, 390 N.Y.S.2d 953 (N.Y. Sup. Ct. 1976) (statute provides liability of an insurer "shall not affect or diminish its obligations under any policy of bodily injury liability insurance"); Kessler v. Weigandt, 68 Or. App. 180, 685 P.2d 425 (1984), aff'd 299 Or. 38, 699 P.2d 183 (1985) (statute provides the liability insurer will pay no more than the amount of damages legally recovered by the injured party). Somewhat like the decision in Hanover, State Farm v. National Union, 563 F. Supp. 813 (D.Haw. 1983), interpreting a statute *627 which provided the PIP carrier with proportionate reimbursement from the tortfeasor's insurer, offered no explanation of why it rejected the liability insurer's claim that reimbursement was restricted to the limits of its policy.
Notably, in Ohio Security Ins. Co. v. Drury, 582 S.W.2d 64 (Ky. Ct. App. 1979), the court allowed reimbursement of the PIP carrier when the tortfeasor's liability policy limits had been nearly or completely exhausted. That court did not look to the legislative intent but simply explained its decision as being "an operation of law," because the statute provided the PIP carrier a "right to recover basic reparation benefits paid" to the injured party. Shortly thereafter, the Kentucky statute was amended to limit the PIP carrier's reimbursement to the tortfeasor's liability policy limits, and then only to be applied after using the policy to satisfy the injured party's recovery.
A major purpose of N.J.S.A. 39:6A-9.1, obviously, is to reduce the cost of private passenger automobile insurance. The Legislature was presumably conversant with opinions construing the No Fault Act when it enacted the extensive revision with which we are now concerned. Brewer v. Porch, 53 N.J. 167, 174, 249 A.2d 388 (1969); Guzman v. City of Perth Amboy, 214 N.J. Super. 167, 174, 518 A.2d 758 (App.Div. 1986). Although the Act changes the result of Aetna v. Gilchrist, supra, it does not affect the suggestion we made in Sherman v. Garcia, supra. Hanover Ins. Co. v. Lewis, supra, acknowledged Sherman v. Garcia, but ignored our direction that legislative action was required to make the tortfeasor's carrier liable beyond its policy limits; instead the court relied on its literal reading of N.J.S.A. 39:6A-9.1. Concluding, as we do, the Legislature did not intend that result, we overrule Hanover Ins. Co. v. Lewis.
Accordingly we affirm the summary judgment granted the commercial liability carrier whose limits had been exhausted.
Affirmed.
NOTES
[1] New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 to 39:6A-35.