278 N.J. Super. 176 (1994)
650 A.2d 832
JOYCE OTTO, PLAINTIFF-RESPONDENT,
v.
PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 25, 1994.
Decided December 21, 1994.
*178 Before Judges BRODY, LONG and LEVY.
Randi S. Greenberg, argued the cause for appellant (Robert A. Auerbach, attorney; Randi S. Greenberg, of counsel and on the brief).
Robert F. Rupinski, argued the cause for respondent (Schulze and Rupinski, attorneys; Mr. Rupinski, on the brief).
LEVY, J.A.D.
In this declaratory judgment action, plaintiff sought to obviate reimbursing her automobile insurer for monies it paid on plaintiff's behalf. Cross-motions for summary judgment were filed, and the trial court ruled in plaintiff's favor. Defendant appeals, and we reverse in part.
On March 10, 1985, plaintiff was involved in a motor vehicle accident with a commercial vehicle principally garaged in this state. She sustained serious injuries for which she sought medical treatment. Plaintiff made a claim with her own insurer, Prudential Property and Casualty Ins. Co. (Prudential). Prudential honored that claim and eventually paid $75,745 for plaintiff's medical expenses. Plaintiff brought an action against the owner and operator of the commercial vehicle, and she settled that claim for $490,000.
N.J.S.A. 39:6A-4.3 authorized automobile insurers to provide certain personal injury protection coverage (PIP) options "at appropriately reduced premiums." Plaintiff chose the "reimbursement setoff" option, and an endorsement to her policy provided:
The named insured may select an option entitling the company to reimbursement from any recovery for non-economic loss from an award, judgment or settlement (including recoveries under Uninsured and Underinsured Motorists coverage), for medical expense benefits it has paid. Reimbursement is limited to the lower of the amount paid by the company for medical expenses, or, 20% of the amount of the award, judgment or settlement. The company has a lien on this recovery. This option is indicated on the Declarations as, "PIP Reimbursement Option Applies." This option applies to the named insured and each resident relative who is not a named insured under another automobile insurance policy.
*179 This option, authorized in 1983 by N.J.S.A. 39:6A-4.3(c),[1] "entitl[ed] an automobile insurer paying [PIP] benefits ... to reimbursement from, and a lien on, any recovery for noneconomic loss by an injured party ... for the amount of the medical expense benefits paid[.]" If the tortfeasor operated a commercial vehicle, N.J.S.A. 39:6A-9.1 provided an entitlement to reimbursement for PIP benefits the PIP carrier had paid to its insured, and the claim for such reimbursement was to be made against the insurer of the commercial tortfeasor "within two years of the filing of the claim." N.J.S.A. 39:6A-9.1, as it applies to an insured commercial vehicle, also provides:
the determination as to whether an insurer ... is legally entitled to recover the amount of payments and the amount of recovery, including the costs of processing benefit claims and enforcing rights granted under this section, shall be made against the insurer of the tortfeasor, and shall be by agreement of the involved parties or, upon failing to agree, by arbitration.
Prudential's internal files indicate it was aware of its right to seek reimbursement from the commercial tortfeasor or the tortfeasor's insurer, but it failed to do so within the time prescribed by law. On November 7, 1987, two notes from Prudential claim representatives state:
Kathy, quickly, now, before statute runs, get a Ltr (letter) out to Ovc (other vehicle carrier) ... advising them of our total PIP subro lien to date . .. we want to get our $ (money) back before the statute runs.
She was involved with a truck who is 100% responsible for P.I.P subro recovery ... Our 2 year statute is running out and I don't want to find out that we lost it.
On June 13, 1989, another file note indicates:
Ov (Other vehicle) is a commercial vehicle. Therefore P.I.P subro applies, this voids 20% set-off. The statute reads "20% of settlement or what was paid in PIP". If we recover through PIP subro, it will be as if we did not pay. Insured has serious multiple injuries including coma, closed head injury ...
Again, on February 22, 1990, the file reveals:
New handler on file, review file ... issues at hand 1) PIP subro, 2) 20% set-off option ... PIP subro and 20% set-off option handle vis split file in central subro by Leah Weidman ... Called rep and discussed, we forfeited right to PIP subro as *180 neither arb. not suit was filed prior to 2 year statute, thereby nullifying our recovery attempt . ..
Then on May 23, 1990, the file notes:
The final outcome appears to be as follows, Pd subro has been recovered. We did in fact "blow" the statute for P.I.P. subro; but we plan on recovering from Insd/attny (Insured's attorney) the 20% set-off option.
Finally, on June 27, 1990, the claims representative writes:
... my notes indicate that we all knew about PIP subro since the inception of this file....
Failing to be reimbursed under N.J.S.A. 39:6A-9.1, Prudential sought to enforce its contractual right of reimbursement from plaintiff. It argues that plaintiff's claim is not for subrogation, not derivative from plaintiff's common law rights, and not governed by equitable principles applicable to subrogation rights. Rather, Prudential asserts the decision must be based solely on "contract law" and the policy does not condition the right of reimbursement upon first pursuing the tortfeasor. We disagree because these two legislative directives work together and should not be viewed as alternative courses of action. N.J.S.A. 39:6A-9.1 is written with mandatory style language, requiring that the reimbursement the PIP carrier seeks from the insured commercial tortfeasor "shall be made against the insurer of the tortfeasor, and shall be by agreement of the involved parties or, upon failing to agree, by arbitration." (emphasis supplied). Concomitantly, the reimbursement setoff option provides the PIP carrier is "entitled ... to reimbursement from, and a lien upon, any recovery for noneconomic loss by an injured party." N.J.S.A. 39:6A-4.3(c).
In this way the Legislature has expressed its intent concerning the order in which the PIP carrier is to be reimbursed. First the carrier shall seek agreement with the commercial tortfeasor's insurer, failing that it shall go to arbitration with that insurer and only if it has still not been made whole, it may recover from the noneconomic compensation settled on or awarded to the injured party. Pursuant to the legislative scheme, we conclude Prudential was first obliged to obtain its reimbursement from the tortfeasor's insurer.
*181 At oral argument, defendant claimed it should recover at least $65,745 of the $75,745 it paid in PIP benefits, because the tortfeasor's insurance coverage was limited to $500,000 of which $490,000 was paid to plaintiff. This claim was also made during the oral argument of the motion for summary judgment in the Law Division, but it was not raised in the Notice of Appeal or in defendant's brief. Any issue not briefed is usually deemed waived. See Matter of Bloomingdale Convalescent Center, 233 N.J. Super. 46, 48 n. 1, 558 A.2d 19 (App.Div. 1989); Pressler, Current N.J. Court Rules, comment on R. 2:6-2 (1995). However, since this circumstance is part of the record and it demonstrates that plaintiff will receive an unfair windfall if the PIP carrier is denied reimbursement, we will consider it on appeal in order to prevent an unjust result. R. 2:10-2.
If Prudential had been reimbursed by the commercial tortfeasor's insurer before plaintiff had settled her lawsuit against that tortfeasor, plaintiff would have been limited by the $500,000 policy cap and the most she could have settled for would have been $424,255. Lacking an excess policy, after its policy limits are exhausted the tortfeasor's carrier is not required to reimburse the PIP carrier. See IFA Ins. Co. v. Waitt, 270 N.J. Super. 621, 626, 637 A.2d 941 (App.Div. 1994). If Prudential had been timely in its quest for reimbursement, it would have had a clear right to recover any unreimbursed amount from plaintiff pursuant to the reimbursement setoff option in her policy. We conclude Prudential has that right here, but principles of good faith require its claim to be reduced by $10,000, the unused balance of the tortfeasor's coverage.
Every contract, including an insurance policy, imposes on each party an implied obligation of good faith and fair dealing in the enforcement and performance of the contract. See Pickett v. Lloyd's, 131 N.J. 457, 467, 621 A.2d 445 (1993). Here the insurer was aware of its ability to be reimbursed completely, but it failed to assert its claim against the tortfeasor's insurer in a timely manner. Only after Prudential realized it was too late to seek *182 such reimbursement did it choose to pursue its insured under the policy. The claim file reveals Prudential was aware of its rights to seek reimbursement from the commercial tortfeasor's carrier before the two year statute of limitations expired. We cannot condone the insurer's own neglect. Accordingly, Prudential's claim for reimbursement of the PIP benefits it paid on plaintiff's behalf must be reduced by $10,000.
Reversed and remanded to the trial court for entry of judgment.
NOTES
[1] This section was repealed in 1988. L. 1988, c. 119.