**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1227-20

GEICO,

    Plaintiff-Appellant,

v.

NEW HAMPSHIRE
INSURANCE COMPANY,

    Defendant-Respondent.

_____

> Argued November 15, 2021 – Decided December 1, 2021
>
> Before Judges Fasciale and Sumners.
>
> On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-6432-20.
>
> William Hahn argued the cause for appellant (Tango, Dickinson, Lorenzo, McDermott & McGee, LLP, attorneys; William Hahn, on the briefs).
>
> Walter F. Kawalec, III, argued the cause for respondent (Marshall Dennehey Warner Coleman & Goggin, attorneys; Sara W. Mazzolla and Walter F. Kawalec, III, on the brief).

PER CURIAM

In this personal injury protection (PIP) reimbursement/subrogation action, plaintiff (PIP carrier) appeals from a December 23, 2020 order denying its application to confirm four arbitration awards totaling $48,397.71, and granting defendant's (commercial carrier) cross-motion to vacate the awards and dismiss the complaint with prejudice.[1] PIP carrier asserts that because commercial carrier—the aggrieved party—did not file a summary action, the commercial carrier's motion to vacate was procedurally deficient. PIP carrier also asserts that the motion was untimely. Finally, PIP carrier maintains that the judge had no basis or discretion to vacate the award. We reject PIP carrier's contentions and affirm.

There are two actions. The first action pertains to a car accident (the underlying action). The second pertains to PIP carrier's PIP reimbursement/subrogation claim (this action).

The underlying action concerned an accident involving a tortfeasor and four injured persons. The injured persons filed lawsuits against the tortfeasor and the tortfeasor's employer. The underlying action settled.

The commercial carrier, which insured the tortfeasor, had issued a $35,000 combined single limit insurance policy. As part of that settlement, the

---

[1] The order is dated December 9, 2020, but was filed on December 23, 2020.

tortfeasor deposited $35,000 from the proceeds of the insurance policy into court. That payment was intended to compensate the injured persons for the injuries they sustained in the car accident. The injured persons, as part of the settlement, released commercial carrier of further obligations.

Meanwhile, the PIP carrier paid the injured parties PIP benefits, which led to this action. After payment of those PIP benefits, the PIP carrier filed for arbitration seeking reimbursement/subrogation against the commercial carrier. It did so purportedly under a PIP arbitration agreement signed by both carriers. According to the agreement, no company was required, without consent, to arbitrate any claim or suit if it would be in excess of its policy limits.

Athens Program Services, Inc. (Athens) acted as third-party administrators for commercial carrier and filed answers to PIP carrier's arbitration claims. Michael Foster was the administrator handling the matter for Athens.[2] The answers stated that the exposures from the injuries were over the commercial carrier's policy limits, and that PIP carrier's claims would exceed those limits. PIP carrier maintains that there was no evidence presented to the arbitrator that commercial carrier's policy was exhausted.

---

[2] As of June 2019, Foster no longer worked for Athens.

A-1227-20

On March 4, 2020, the arbitrator entered four awards, totaling $48,397.71, in favor of PIP carrier. Foster was still listed as the point of contact, despite no longer working for Athens. On September 28, 2020, PIP carrier filed an order to show cause with a verified complaint seeking to confirm the arbitration awards and enter them as a judgment in the Law Division. Commercial carrier filed an answer and cross-motion to vacate the arbitration awards.

On December 9, 2020, the Law Division judge held a hearing addressing the motion to confirm and cross-motion to dismiss and vacate the awards. The judge granted commercial carrier's cross-motion to dismiss and vacate the awards.

On appeal, PIP carrier asserts primarily that the judge was without authority to vacate the awards under N.J.S.A. 2A:23B-23. PIP carrier also contends that commercial carrier's motion was improperly presented and untimely filed.

I.

"[T]he scope of review of an arbitration award is narrow. Otherwise, the purpose of the arbitration contract, which is to provide an effective, expedient, and fair resolution of disputes, would be severely undermined." Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013) (quoting Fawzy v. Fawzy,

199 N.J. 456, 470 (2009)). The decision to vacate or confirm an arbitration award is a matter of law; this court reviews the denial or grant of an application to vacate or confirm an arbitration award de novo. Ibid. (citing Manger v. Manger, 417 N.J. Super 370, 376 (App. Div. 2010)).

A.

First, PIP Carrier asserts commercial carrier's motion was procedurally deficient. Specifically, that the motion was improperly presented to the court and untimely. We reject these contentions because they are without support under the New Jersey Arbitration Act.

The New Jersey Arbitration Act allows for a summary action under Rule 4:67-1 and Rule 4:67-2 to confirm an arbitration award. N.J.S.A. 2A:23B-22 states:

> After a party to an arbitration proceeding receives notice of an award, the party may file a summary action with the court for an order confirming the award, at which time the court shall issue a confirming order unless the award is . . . vacated pursuant to section 23 of this act.

And N.J.S.A. 2A:23B-23(a) provides that the judge may vacate an arbitration award where:

> (1) the award was procured by corruption, fraud, or other undue means;

A-1227-20

(2) the court finds evident partiality by an arbitrator; corruption by an arbitrator; or misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;

(3) an arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to section 15 of this act, so as to substantially prejudice the rights of a party to the arbitration proceeding;

(4) an arbitrator exceeded the arbitrator's powers;

(5) there was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection pursuant to subsection c. of section 15 of [N.J.S.A. 2A:23B] no later than the beginning of the arbitration hearing . . . .

As to the timing, N.J.S.A. 2A:23B-23(b) provides:

A summary action pursuant to this section shall be filed within 120 days after the aggrieved party receives notice of the award pursuant to section 19 of this act or within 120 days after the aggrieved party receives notice of a modified or corrected award pursuant to section 20 of this act, unless the aggrieved party alleges that the award was procured by corruption, fraud, or other undue means, in which case the summary action shall be commenced within 120 days after the ground is known or by the exercise of reasonable care would have been known by the aggrieved party.

6

The arbitrator entered the four awards in favor of PIP carrier on March 4, 2020. PIP carrier filed its verified complaint and order to show cause on September 28, 2020. Commercial carrier received notice of the complaint and order to show cause on October 15, 2020. Commercial carrier filed an answer and cross-motion to vacate the arbitration awards on October 30, 2020.

PIP carrier asserts that commercial carrier's cross-motion was procedurally deficient because it needed to file a separate summary action for a motion to vacate 120 days after the initial arbitration award. We disagree for two reasons. First, the provision of N.J.S.A. 2A:23B-23(b) on which PIP carrier relies only applies when the aggrieved party files the summary action. Second, regardless of when commercial carrier received notice of the arbitration awards, commercial carrier was not barred from asserting its opposition to PIP carrier's motion to confirm.

The parties dispute when commercial carrier received notice of the arbitration awards. Foster was the point of contact listed for the arbitration awards, and his involvement ceased when he left employment at Athens. But the record is bereft of evidence showing commercial carrier knew about the awards until PIP carrier's motion to confirm the awards. And regardless of when commercial carrier received notice, it was entitled to oppose PIP carrier's motion

7

to confirm the awards.  We nevertheless conclude commercial carrier's motion to vacate was not untimely.

B.

We now address the substance of PIP carrier's primary argument.  PIP carrier asserts that there was no basis to vacate the award because there was no evidence presented to the arbitrator at the time of the hearings that commercial carrier's policy was exhausted.  We disagree.

A judge may vacate an award made in the arbitration proceeding if the "arbitrator exceeded the arbitrator's powers . . . [or] there was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection pursuant to subsection c. of section 15 of [N.J.S.A. 2A23B] no later than the beginning of the arbitration hearing."  N.J.S.A. 2A:23B-23(a)(4)-(5).  The scope of arbitration, and the arbitrator's authority, "depends on the terms of the contract between the parties."  Scotch Plains-Fanwood Bd. of Educ. v. Scotch Plains-Fanwood Educ. Ass'n, 139 N.J. 141, 149 (1995).  "Any action taken beyond that authority is impeachable and may be vacated on statutory grounds."  Ibid.  And "an arbitrator exceeds his or her 'authority by disregarding the terms of the parties' agreement.'"  Borough of E. Rutherford v.

E. Rutherford PBA Local 275, 213 N.J. 190, 203 (2013) (quoting N.J. Off. of

Emp. Relations v. Commc'n Workers of Am., 154 N.J. 98, 112 (1998)).

N.J.S.A. 39:6A-9.1(b) states:

> In the case of an accident occurring in this State involving an insured tortfeasor, the determination as to whether an insurer, health maintenance organization or governmental agency is legally entitled to recover the amount of payments and the amount of recovery, including the costs of processing benefit claims and enforcing rights granted under this section, shall be made against the insurer of the tortfeasor, and shall be by agreement of the involved parties or, upon failing to agree, by arbitration. Any recovery by an insurer, health maintenance organization or governmental agency pursuant to this subsection shall be subject to any claim against the insured tortfeasor's insurer by the injured party and shall be paid only after satisfaction of that claim, up to the limits of the insured tortfeasor's motor vehicle or other liability insurance policy.

The PIP agreement, signed by both parties, provided that "[n]o company shall be required, without its written consent, to arbitrate any claim or suit if . . . (d) any payment which such signatory company may be required to make under this [a]greement is or may be in excess of its policy limits." The arbitration forum's reference guide also provides that the "arbitration lacks jurisdiction when an award will exceed a member's policy limits." The applicable policy limit here was $35,000 for any claim for bodily injury in one action. The parties in the underlying car accident settled the cases after a settlement conference.

A-1227-20

The tortfeasor paid into court the amount owed to the parties with the proceeds of the commercial carrier's policy, which exhausted its applicable policy limit.

PIP carrier asserts that because there was no evidence presented to the arbitrator at the time of the hearings that commercial carrier's policy was exhausted, the arbitrator did not exceed the scope of its power in issuing the awards. This ignores the settlement agreement, the arbitration agreement between the parties, and caselaw.

PIP reimbursement from an insured tortfeasor is limited to a claim against the tortfeasor's insurer. Payment after the insured's bodily injury claim has been resolved can be made up to the insurer's available limits and may not be recovered from the insured tortfeasor's personal assets. N.J.S.A. 39:6A-9.1(b). Here, the tortfeasor settled with the injured parties with proceeds from the commercial carrier's policy, exhausting the policy. And the PIP agreement, signed by both parties, provided that no party could arbitrate if payment exceeded its policy limits. Finally, this is consistent this court's conclusion that the PIP reimbursement statute "does not require the commercial tortfeasor's carrier to reimburse the PIP carrier after exhaustion of the liability policy limits where there is no excess policy." IFA Ins. Co. v. Waitt, 270 N.J. Super. 621, 626 (App. Div. 1994). Thus, the arbitrator exceeded his authority by issuing

10

arbitration awards in excess of the policy agreement and did so without jurisdiction.  See N.J.S.A. 2A:23B-23(a)(4)-(5); see also E. Rutherford PBA Local 275, 213 N.J. at 203.

To the extent we have not addressed PIP carrier's remaining contentions, we conclude that they are without sufficient merit to warrant attention in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1227-20